UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| RAE DRAKE,<br>an adult individual resident of Lewiston,<br>County of Androscoggin, and<br>State of Maine, | **JURY TRIAL REQUESTED AND INJUNCTIVE RELIEF SOUGHT** |
| Plaintiff, | |
| | CASE NO. |
| v. | |
| TRI-COUNTY MENTAL<br>HEALTH SERVICES,<br>a non-profit corporation registered to<br>do business in the State of Maine,<br>with a place of business in Lewiston,<br>County of Androscoggin, and State<br>of Maine, | |
| and | |
| DIANE TAGLIENTI, an adult<br>individual resident of Auburn, County<br>of Androscoggin, and State of Maine. | |
| and | |
| DONALD DUFOUR, an adult individual<br>Resident of Bowdoin, County of<br>Sagadahoc, and State of Maine, | |
| Defendants. | |

## COMPLAINT

NOW COMES the Plaintiff, Rae Drake, and makes the following complaint against Tri-County Mental Health Services ("Tri-County"), Diane Taglienti and Donald Dufour.

### Nature of Action

1. This is an action under Title I of the Americans With Disabilities Act of 1990, as amended ("ADA"), the Americans with Disabilities Act as Amended ("ADAAA"), the Family and Medical Leave Act ("FMLA"), and under the laws of the State of Maine,

including the Maine Human Rights Act ("MHRA") and Maine Family Medical Leave law, to correct and remedy unlawful employment practices on the basis of disability and to make whole and compensate the Plaintiff.

2. Defendants discharged the Plaintiff, a qualified individual with a disability, from her position with Tri-County, because of her disability and in retaliation for taking protected medical leave, as more particularly set forth in this complaint.

## Parties

3. Rae Drake is a citizen of Lewiston, Maine.

4. The Tri-County Mental Health Services is a duly-organized Maine nonprofit corporation and has had more than 400 employees for each working day in each of 20 or more calendar weeks in the same calendar year as, or in the calendar year prior to, when the discrimination alleged in this case occurred.

5. Diane Taglienti is a citizen of Auburn, Maine, and is the Director of Human Resources for Tri-County at all times relevant to this Complaint.

6. Donald Dufour is a citizen of Bowdoin, Maine, and was the Manager of Human Resources for Tri-County at all times relevant to this Complaint.

## Jurisdiction and Venue

7. This court has jurisdiction of the federal claims asserted here pursuant to §§ 1331 and 1343 of Title 28 (28 U.S.C.A. §§ 1331, 1343). This court has supplemental jurisdiction over the claim in this action arising under the law of the State of Maine pursuant to 28 U.S.C.A. § 1367.

8. The unlawful employment practices complained of in this complaint principally occurred, and the employment records relevant to this matter are maintained and administered, within Androscoggin County, Maine, and venue is proper within this District.

9. On February 20, 2015, Plaintiff filed a complaint of discrimination with the Maine Human Rights Commission ("MHRC").

10. More than 180 days having passed, the Commission issued a right to sue letter on March 28, 2016, pursuant to 5 M.R.S. § 4612 and § 4622.

11. On or about February 20, 2015, the Plaintiff filed with the Equal Employment Opportunity Commission ("EEOC") a charge of discrimination. The charge of discrimination was timely filed and included the discrimination complained of in this Complaint.

12. On March 23, 2016, the EEOC mailed the Plaintiff a Notice of Right to Sue (the "Notice"), certifying that the EEOC is terminating its processing of the charge, and that the Plaintiff could file a civil action against the Company within 90 days from receipt of the Notice.

13. The Plaintiff received a copy of the Notice on or about March 24, 2016, and the Plaintiff has timely instituted this action.

## Jury Demand

14. Plaintiff demands trial by jury of all claims to the extent allowed by law.

## Factual Background

15. In 2007, Plaintiff was hired as a Medication Management Care Manager at Tri-County in Lewiston, ME, which involved supporting the clinical staff in managing their patients' medications.

16. Starting in March 2014, Plaintiff began having problems with Operations staff at Tri-County bullying and harassing her. For example, if she was on the phone attending to a work issue, someone from Operations would repeatedly try and put through other calls

and buzz her repeatedly to take the call. This would interrupt and interfere with Plaintiff's work.

17. This harassment exacerbated Plaintiff's stress and anxiety levels, and, in March, Plaintiff took approximately a week of leave using her paid time off (PTO) at the recommendation of her primary care physician (PCP).

18. Upon her return, the harassment only escalated, which further exacerbated Plaintiff's depression and anxiety.

19. For example, Operations staff filed at least one false complaint against Plaintiff, alleging that she failed to call back a patient when, in fact, she had never received a message to call the patient at all.

20. Based on all of these actions from March through September 2014, Plaintiff perceived that Operations staff did not like her and were picking on her, trying to get her fired.

21. Tri-County was aware of the situation developing between Plaintiff and the Operations staff. In the first week of August 2014, at the request of her supervisor, Thomas Sneed, Plaintiff met with Bridget Nota, Operations Supervisor, to discuss her working relationship with Operations staff. Plaintiff and Bridget met and discussed the working relationship, and they left that meeting on good terms. Plaintiff thought that the issues with her and Operations staff were going to end. Unfortunately, they did not.

22. On September 5th, Plaintiff could not take it anymore. On that day, she received an email from Bridget, which copied her supervisors, telling Plaintiff to answer the phone more because Operations was overwhelmed. This was not an email that needed to copy her supervisors; it was another passive aggressive jab to try and make Plaintiff appear to be not doing her job. Conscious of the fact that Bridget had copied her bosses, at 3:23pm Plaintiff replied:

4

> I believe I am being unfairly targeted by Operations and singled out from other coworkers in regard to expectations related to Ops functioning.  This has been ongoing for some time now, and has gotten to the point that Ops Staff had lodged complaints against me, without substantiated reason or justification.

23. This was Plaintiff's breaking point, as this situation had caused her an enormous amount of stress and anxiety.  After she sent this email at 3:30pm on September 5th, Plaintiff called her doctor and was able to be squeezed in for an appointment around 4:00pm that day to discuss the medical issues caused by her work environment.  At this appointment, Plaintiff's doctor immediately gave her a note that said she was under her doctor's care and would be out of work for four weeks.

24. After seeing her PCP on September 5th and shortly before the end of the work day, Plaintiff hand delivered her PCP's note to Tri-County by putting a copy of the note in the HR mailbox and had Operations staff, Carol Libby, fax a copy to Thomas Sneed, her direct supervisor.

25. Plaintiff's medical leave began the following Monday, September 8, 2014.

26. In addition to hand delivering her doctor's note to Tri-County's HR mailbox and having a copy faxed to her direct supervisor, Plaintiff took the additional step of emailing Dr. Sneed, her supervisor, on Sunday, September 7th, to alert him that she would be out on medical leave for the following four weeks, per her PCP's order.  Dr. Sneed acknowledged receiving that email shortly thereafter and wished Plaintiff well.

27. On October 3, 2014, Plaintiff again visited her PCP and was put on continued medical leave due to her anxiety and stress issues for an additional two weeks.

28. On the same day, October 3rd, Plaintiff hand delivered a copy of her new doctor's note to Tri-County via the HR mailbox with a copy again faxed to Dr. Sneed, her supervisor.

29. Unfortunately, Plaintiff's health did not improve, and her PCP put her on continued medical leave at her next appointment on October 31, 2014, to go through November 28, 2014.

30. On the same day, October 31st, Plaintiff hand delivered a copy of her doctor's note to Tri-County via the HR mailbox with a copy again faxed to Dr. Sneed, her supervisor.

31. On November 4, 2014, Plaintiff was notified by Tri-County's Manager of Human resources, Donald Dufour, that she would be terminated effective November 28, 2014, pursuant to Tri-County's Prolonged Absences Policy if she did not return by then.

32. Tri-County was aware that Plaintiff would be out of work until at least November 28, 2014, per her most recent doctor's note.  She reasonably assumed that she had been terminated, which was reinforced by a statement from Mr. Dufour on the November 4th call that she could make arrangements to pick up her personal belongings from work.

33. On or about November 10, 2014, Plaintiff received a certified letter from Tri-County, signed by Catherine Ryder, Executive Director, stating that Plaintiff's employment would be terminated effective November 28, 2014, in accordance with Tri-County's Prolonged Absences Policy.

34. On November 24, 2014, Plaintiff sent an email to Don Dufour and Dr. Sneed asking him to confirm that the prolonged absence for which she was being terminated was the time she was out on FMLA.

35. On November 25, 2014, Mr. Dufour confirmed that Plaintiff was being terminated because she took her statutorily-protected 12 weeks of FMLA: "Yes, the time being referred to by the Prolonged Absence policy is the time you have been away on FMLA (and Disability) - which run concurrently."

36. On November 28, 2014, Plaintiff emailed Mr. Dufour, Dr. Sneed and Tri-County's HR benefits specialist to ask for a reasonable accommodation of additional leave past FMLA leave so that she could meet with her doctor to determine when she could return to her regular work schedule.

37. Tri-County did not respond to Plaintiff's request for an accommodation until December 2, 2014, when Diane Taglienti, Tri-County's Director of Human Resources, summarily denied Plaintiff's request for an accommodation without engaging in any interactive process, not even asking a single question about how long Plaintiff might need to meet with her doctor.  Instead, Plaintiff was terminated.

38. On information and belief, Plaintiff's position was never filled, which demonstrates that there was no undue burden on Tri-County to hold her position open for a short period longer while she met with her doctor.

39. While Plaintiff was out on leave, Tri-County filled Plaintiff's position by splitting her duties between two employees and continued to do so permanently after Plaintiff was terminated.

**COUNT I:**
**Disability Discrimination under the ADA and ADAAA**
**Against Tri-County Mental Health Services**

40. The Plaintiff incorporates and realleges paragraphs 1 through 39 of this Complaint as if fully set forth here.

41. Plaintiff was a qualified person with a disability as defined by the ADA and ADAAA, 42 U.S.C. § 12102.

42. Tri-County knew of Plaintiff's disability and her request for additional leave while she discussed her health with her doctor and failed to reasonably accommodate Plaintiff with additional leave after her federally-protected leave ran out.

43. Tri-County, in fact, refused to engage in any interactive process with Plaintiff to determine what additional accommodation she might need to discuss her health with her doctor. Tri-County never even asked Plaintiff how much time she might need to speak with her doctor before summarily terminating her and denying her request for an accommodation.

44. Tri-County, through its duly authorized agents and employees, who acted on behalf of the Tri-County within the scope of their employment, intentionally discriminated against the Plaintiff based on her disability and based on the exercise of her rights protected by the ADA and ADAA by discharging the Plaintiff from her employment based on her disability and use of protected leave.

45. Plaintiff was and is qualified for the Medication Management Care Manager position at Tri-County despite her disability, since she satisfies the skill, experience, and other job-related requirements for the position, and since Plaintiff was and is able to perform the essential functions of the position with or without reasonable accommodation.

46. Tri-County terminated Plaintiff because of her disability and use of leave pursuant to the company's Prolonged Absences Policy, which is direct evidence of discrimination based on disability.

47. The alleged reason for terminating the Plaintiff's employment was mere pretext for the real reason, namely, the intentional discrimination by Tri-County against the Plaintiff based on disability and for use of protected leave.

48. Tri-County acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

49. As a direct and proximate result of the intentional discriminatory acts and practices of Tri-County, its agents and employees, including the discriminatory discharge of the Plaintiff's employment, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to her reputation, and other past and future pecuniary losses.

## COUNT II:
## Disability Discrimination under the MHRA
## Against Tri-County Mental Health Services

50. The Plaintiff incorporates and realleges paragraphs 1 through 49 of this Complaint as if fully set forth here.

51. Plaintiff is and was at all times pertinent to this action covered by the provision of the MHRA, 5 M.R.S. § 4571.

52. Plaintiff was and is qualified for the Medication Management Care Manager position at Tri-County despite her disability, since she satisfies the skill, experience, and other job-related requirements for the position, and since Plaintiff was and is able to perform the essential functions of the position with or without reasonable accommodation.

53. Tri-County, through its duly-authorized agents and employees, who acted on behalf of Tri-County within the scope of their employment, intentionally discriminated against the Plaintiff based on her disability and based on the exercise of her rights protected by the MHRA by discharging the Plaintiff from her employment based on her disability and use of protected leave.

54. Tri-County terminated Plaintiff because of her disability and use of leave pursuant to the company's Prolonged Absences Policy, which is direct evidence of discrimination based on disability.

55. The alleged reason for terminating the Plaintiff's employment was mere pretext for the real reason, namely, the intentional discrimination by Tri-County against the Plaintiff based on disability and for use of protected leave.

56. Tri-County acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.  Tri-County was also motivated by discriminatory intent.

57. As a direct and proximate result of the intentional discriminatory acts and practices of the Tri-County, its agents and employees, including the discriminatory discharge of the Plaintiff's employment, the Plaintiff has suffered and continues to suffer injury, including past and future loss of income and other employment benefits, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, damage to her reputation, and other past and future pecuniary losses.

58. Tri-County discriminated against Plaintiff in violation of the Maine Human Rights Act, 5 M.R.S.A. § 4571 et seq.

### COUNT III:
### Retaliation under the ADA and ADAAA for Requesting a Reasonable Accommodation Against Tri-County Mental Health Services

59. The Plaintiff incorporates and realleges paragraphs 1 through 58 of this Complaint as if fully set forth here.

60. Plaintiff engaged in the statutorily-protected activity of taking protected leave and was terminated because of engaging in this statutorily-protected activity.

61. On or about November 28, 2014, Plaintiff requested a reasonable accommodation of additional leave so that she could meet with her doctor and determine when she could return to work.

62. Tri-County did not engage in any interactive process and summarily denied Plaintiff's request without seeking any additional information from Plaintiff about how much time she might need.

63. Because Tri-County would not engage in any interactive process, Plaintiff was immediately terminated.

64. Due to the temporal proximity of Plaintiff requesting an accommodation and her termination, one can infer the causal link between the protected activity and the adverse action.

65. But for Tri-County's denial of additional leave, Plaintiff would have been able to return to work and perform all the duties of her job.  There was no undue hardship in granting Plaintiff some additional leave to see her physician and be cleared to return.

66. Tri-County acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

### COUNT IV:
### Retaliation under the MHRA, 5 M.R.S. § 4633, for Requesting a Reasonable Accommodation Against Tri-County Mental Health Services

67. The Plaintiff incorporates and realleges paragraphs 1 through 66 of this Complaint as if fully set forth here.

68. On or about November 28, 2014, Plaintiff requested a reasonable accommodation of additional leave so that she could meet with her doctor and determine when she could return to work.

69. Tri-County did not engage in any interactive process and summarily denied Plaintiff's request without seeking any additional information from Plaintiff about how much time she might need.

70. Because Tri-County would not engage in any interactive process, Plaintiff was immediately terminated.

71. Due to the temporal proximity of Plaintiff requesting an accommodation and her termination, one can infer the causal link between the protected activity and the adverse action.

72. But for Tri-County's denial of additional leave, Plaintiff would have been able to return to work and perform all the duties of her job.  There was no undue hardship in granting Plaintiff some additional leave to see her physician and be cleared to return.

73. Tri-County acted with malice or with deliberate conduct or in such a manner that, although motivated by something other than ill will toward any particular party, is so outrageous that malice toward Plaintiff can be implied.

## COUNT V:
## Retaliation under 26 M.R.S. § 847 for Taking Maine Family Medical Leave Against Tri-County Mental Health Services

74. The Plaintiff incorporates and realleges paragraphs 1 through 73 of this Complaint as if fully set forth here.

75. Tri-County has at all relevant times had more than 400 employees.

76. Prior to taking medical leave in 2014, Plaintiff had worked for Tri-County for at least 12 consecutive months at a worksite with more than 15 employees.

77. As a result of persistent bullying and harassment at work, Plaintiff was ordered by her doctor to take medical leave between September and November 2014, which is statutorily-protected activity under the Maine Family Medical Leave law.

78. While Plaintiff was on medical leave, Tri-County informed her that she would be terminated pursuant to its Prolonged Absences Policy.

79. Tri-County confirmed that the "absence" for which Plaintiff was being terminated was the period during which Plaintiff was taking protected medical leave and for no other reason. This is direct evidence of retaliation.

80. Tri-County thereafter discharged Plaintiff for the sole reason that she exercised her right to take statutorily-protected Maine Family Medical Leave.

81. Tri-County's actions constitute a willful violation of the law.

82. Plaintiff is therefore entitled to liquidated damages of $100 for each day she was retaliated against for taking Maine Family Medical leave, and twice the amount of lost wages, salary, employment benefits or other compensation under 26 M.R.S. § 848(1)-(2).

## COUNT VI: Retaliation under FMLA for Taking Federal Family Medical Leave Against All Defendants

83. The Plaintiff incorporates and realleges paragraphs 1 through 82 of this Complaint as if fully set forth here.

84. Plaintiff worked at Defendants' workplace that has at all relevant times had at least 50 workers within 75 miles of its workplace.

85. Prior to taking medical leave in 2014, Plaintiff had worked for Tri-County for at least 1,250 hours during the past 12 months.

86. Defendants Dufour and Taglienti acted directly or indirectly in the interest of their employer, Tri-County, at all times relevant to this Complaint and were Plaintiff's

employer under the FMLA, pursuant to 29 U.S.C. § 2611(4)(A)(ii)(I) and 29 C.F.R. 825.104.

87. As Plaintiff's employer, Defendants Dufour and Taglienti exercised authority over Plaintiff and were responsible, in whole or in part, for the violation of Plaintiff's rights while acting in Tri-County's interest.

88. Pursuant to her doctor's order, Plaintiff took federal statutorily-protected medical leave to address medical issues that were created and/or exacerbated by the harassment and bullying Plaintiff suffered while working at Tri-County.

89. While Plaintiff was on medical leave, Defendants informed her that she would be terminated pursuant to its Prolonged Absences Policy.

90. Defendants confirmed that the "absence" for which Plaintiff was being terminated was the period during which Plaintiff was taking medical leave and for no other reason.

91. Defendants thereafter discharged Plaintiff for the sole reason that she exercised her right to take FMLA leave.

92. Due to the temporal proximity, one can infer the causal link between the protected activity and the adverse action.

93. The actions complained of above show that the Defendants' actions were not taken in good faith with reasonable grounds for believing its acts were not in violation of the FMLA and that Defendants knew or recklessly disregarded their obligations under the FMLA.

94. Plaintiff is entitled to lost wages, salary, employment benefits, and other compensation denied or lost, including interest, as well an additional amount as liquidated damages equal to the sum of her lost wages, salary, employment benefits, or other compensation denied plus the interest thereon pursuant to 29 U.S.C. § 2617(1)(A).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court enter an Order providing as follows:

A.	Enter judgment declaring that the Tri-County's practices complained of herein are unlawful as alleged;

B.	Grant Plaintiff a permanent injunction enjoining Tri-County, its officers, agents, successors, employees, attorneys and assigns and other representatives, and all persons acting in concert with it and at its direction, from engaging in any employment policy or practice which retaliates against Plaintiff;

C.	Order Tri-County to make Plaintiff whole by providing reinstatement and/or front pay, appropriate back pay, and reimbursement for health, medical and other benefits in amounts to be shown at trial;

D.	Order Defendants to pay Plaintiff compensatory damages for non-pecuniary losses, including, but not limited to, severe emotional pain and suffering, mental anguish, humiliation, loss of enjoyment of life, costs associated with obtaining reemployment, embarrassment, and damage to her reputation;

E.	Order Tri-County to pay Plaintiff civil penal damages pursuant to 5 M.R.S. § 4613(2)(B)(7);

F.	Order Tri-County to pay Plaintiff liquidated damages of $100 per day under the Maine Family Medical Leave Act, 26 M.R.S. § 848(1)(B), plus an additional amount for liquidated damages under 26 M.R.S. § 848(2) because the violation was willful;

G.	Order Tri-County to pay Plaintiff liquidated damages under the Family Medical Leave Act, 29 U.S.C. § 2617(a)(1)(A)(iii);

H.	Order Defendants to pay litigation costs and expert witness fees;

I.	Order Defendants to pay Plaintiff nominal damages;

      J.      Order Defendants to pay pre-judgment, post-judgment interest, and reasonable attorneys' fees to Plaintiff; and

      K.      Grant such additional relief as this Court deems appropriate.

/s/ Amy Dieterich, Esq.
/s/ Jordan Payne
Amy Dieterich, Esq.
Jordan L. Payne, Esq.
*Attorneys for Plaintiff Rae Drake*
SKELTON TAINTOR & ABBOTT
95 Main Street
Auburn, ME 04210
(207) 784-3200
adieterich@sta-law.com
jpayne@sta-law.com

Date:  June 2, 2016